United States District Court
Southern District of Texas
**ENTERED**
September 26, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Brian Jerone White, § § § *Plaintiff,* § § § v. § § Kilolo Kijakazi, § Acting Commissioner of Social § Security, § § *Defendant.* § | Case No. 4:21-cv-00400 |

# MEMORANDUM AND ORDER

This is an appeal from an adverse decision by Defendant Commissioner of Social Security against Plaintiff Brian White. The parties consented to proceed before a magistrate judge. Dkt. 9, 16. After reviewing the record, the applicable law, and both parties' submissions, Dkt. 25-27, 31, 39, the Court concludes that the decision by the Administrative Law Judge ("ALJ") is supported by substantial evidence, and accordingly affirms the decision below.

## Background

Mr. White began his career as a member of the United States Navy. He served as an intelligence specialist for five years, during which he was deployed to Iraq. R.205, 432. After separating from the military, Mr. White obtained work as a mail carrier—a position that he held for almost twenty years. R.201.

While serving in the Navy, Mr. White experienced traumatic events. During his tours in Saudi Arabia, Iraq, and Kuwait, Mr. White was "expos[ed] to [the] death of others" and "handl[ed] bodies." R.939. Ultimately, Mr. White was diagnosed with Post-Traumatic Stress Disorder. R.14. The Department of Veteran's Affairs designated Mr. White as totally and permanently disabled and provides him with 100% service-connected disability benefits. R.263.

Working as a mail carrier took a toll on Mr. White's physical condition; he began to develop lumbar disc disease, trigger finger, shoulder arthralgia, hypertension, pes planus, annular fissure, and spinal canal stenosis. R.18-19. Mr. White also suffers from obesity, kidney disease, tinnitus, migraines, tension headaches, hypertension, and otalgia. *Id.*

On June 18, 2019, Mr. White applied for social security benefits, alleging that his limitations precluded him from performing work as a postal carrier anymore. *See* R.160. After the Commissioner denied his request for benefits, Mr. White sought review from an ALJ, who held a hearing, R.34-55, and ultimately issued a decision finding Mr. White not disabled. R.29. The Social Security Appeals council affirmed the ALJ's decision. R.1. Mr. White then sought review from this Court. Dkt. 1 at 1.

## **Standard of Review**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is "more than a scintilla, but it need not be a preponderance." *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)).

When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). But judicial review must not be "so obsequious as to be meaningless." *Brown*, 192 F.3d at 496 (quotations omitted). The court must scrutinize the record as a whole, taking into account whatever fairly detracts from the weight of evidence supporting the Commissioner's findings. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

## Analysis

### I. Legal Framework

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which is used to evaluate steps four and five. *Id.* at 776 n.2 (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Id.* at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.* at 753-54.

## II.    The ALJ correctly evaluated Mr. White's chronic pain.

Mr. White argues that the ALJ erred at step two of the inquiry by failing to include his chronic pain as a severe impairment. Dkt. 25 at 7. According to Mr. White "had the ALJ considered Plaintiff's chronic pain, both singly and in combination with her other impairments, he could have found that she had a severe impairment and consequently found the plaintiff disabled." *Id.* at 10 (citing *Fernandez v. Colvin*, 2013 WL 1729210, at \*9 (N.D. Tex. Apr. 19, 2013) and *Tebyanian v. Colvin*, 2015 WL 4475762, at \*9 (N.D. Tex. July 22, 2015)).

Mr. White's contention fails for two reasons. First, he fails to show how the ALJ's decision not to consider his pain as a severe impairment was error. Pain, in and of itself, can be disabling. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). But to meet that threshold, the pain must be "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Id.* (quoting *Selders v. Sullivan,* 914 F.2d 614, 618-19 (5th Cir. 1990). Although some evidence reflects that Mr. White suffered chronic pain, *see* Dkt. 25 at 8-9, the Commissioner correctly notes that other evidence showed that Mr. White's pain responded appropriately to treatment. *See* Dkt. 39 at 4-5 (noting that Mr. White's back pain was responsive to physical therapy and injections). On this record, there was more than enough evidence for the ALJ to find that Mr. White's pain was not severe, let alone disabling.

Even if the ALJ should have considered Mr. White's pain a severe impairment, Mr. White failed to show how such a failure would amount to reversible error. At step two of the five-step sequence, the claimant must demonstrate that he suffers from at least *one* severe impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant makes such a showing, then the ALJ proceeds to step three of the process. *Id.*

Unlike in Mr. White's cited case, the ALJ found multiple severe impairments. *Compare* R.14 (listing multiple severe impairments), *with Tebyanian*, 2015 WL 4475762, at *4 (finding no severe impairments, which ended the inquiry). The ALJ thus proceeded to step three of the analysis. R.14-15. Yet Mr. White does not attempt to show that classifying his chronic pain as a severe impairment would have changed the ALJ's ultimate conclusion that Mr. White is not disabled. *Cf. Keel v. Saul*, 986 F.3d 551, 556-57 (5th Cir. 2021) (holding that ALJ's failure to apply the correct standard for severe impairment does not automatically warrant reversal). Mr. White "thus fails to overcome the harmless error rule." *Id.* at 557.

### III. The ALJ properly formed Mr. White's RFC.

Mr. White next contends that the ALJ did not properly account for certain limitations when forming his RFC. Specifically, Mr. White emphasizes his trigger finger disorder and recurring headaches. *See* Dkt. 25 at 11-17; Dkt.

31 at 2. He argues that the severity of these limitations merited a more restrictive RFC. *Id.*

At bottom, Mr. White asks this Court to reweigh the evidence, which controlling law precludes. *See Brown*, 192 F.3d at 496. Courts give considerable deference to the ALJ's decision, including when they analyze facts that underlie the ALJ's formulation of a claimant's RFC. *Id.* A court may only reverse the decision of the ALJ if the ALJ's decision is not supported by substantial evidence. *See* 42 U.S.C. § 405(g).

As the Commissioner notes, the ALJ discussion of the medical evidence refutes Mr. White's notion that the ALJ "substituted her judgment" for that of the treating physicians. *See* Dkt. 25 at 12; Dkt. 39 at 4-5. Indeed, the ALJ identifies medical records supporting her RFC formation. *See* R.19 (citing R.428 for the proposition that in 2019 Mr. White's treating physician noted normal "tone and bulk in all extremities with no deficits of sensation, reflexes, or motor strength"). Because ALJ resolved this conflicting information when limiting Mr. White to "frequent" fingering, the Court cannot substitute its judgment for that of the ALJ. *See Perez*, 415 F.3d at 461.

The ALJ also weighed conflicting evidence regarding Mr. White's migraine headaches, which he complained about having from 2018 to 2019. *See* R.301, 624-26. But when Mr. White saw his treating physician in February of 2020, he denied having any headaches. R.657. The ALJ properly considered

7

and resolved this conflict when forming Mr. White's RFC. *See Webster v. Kijakazi*, 19 F.4th 715, 719-20 (5th Cir. 2021) (noting that supportability and consistency are the most important factors that an ALJ considers when reviewing medical evidence provided by treating physicians). Moreover, Mr. White's records contained no evidence of neurological abnormalities. R.395, 408. 657. He was prescribed medication for his migraines but was sometimes non-compliant with medication advice. R.595, 616. These facts further support the ALJ's decision to refrain from including a limitation in Mr. White's RFC that would require resting for multiple intervals throughout the day. *See Johnson v. Sullivan*, 894 F.2d 683, 686 (5th Cir. 1990) (holding that treatable conditions, including pain, cannot be the basis of a disabled rating).

In short, the formation of Mr. White's RFC is supported by substantial evidence. The Court will not disturb the ALJ's findings on this issue.

## IV. The ALJ correctly determined that Mr. White can perform work that exists in significant numbers in the national economy.

Mr. White next asserts that the ALJ failed to properly limit the number of jobs he could perform based on his other limitations. First, Mr. White reprises his contentions that his trigger-finger condition and headaches should have foreclosed some of the jobs identified by the vocational expert. *See* Dkt. 25 at 17-18. Second, Mr. White contends that some of the limitations in the ALJ's RFC conflict with the requirements specified in the Dictionary of

8

Occupational Titles (DOT) for the jobs the ALJ asserted that Mr. White could perform. *Id.* at 19-24. Those jobs, as the ALJ, found, included three light, unskilled jobs—mail clerk, checker I, and office helper—and three sedentary, unskilled jobs—table worker, mail addresser, and surveillance system monitor. R.28.

Under his RFC, Mr. White can only "understand, remember and apply/carry out simple instructions; perform simple tasks" and he is limited to "occasional contact with supervisors, coworkers, and the general public." R.17. But according to the DOT, a surveillance system monitor must engage in "frequent" talking and communication with others. DOT 379.367-010, 1991 WL 673244 (1991). Further, all of the jobs listed (except table worker) have a reasoning level of "two" which, according to the DOT, requires the ability to "apply commonsense understanding to carry out detailed but uninvolved written or oral instructions." DOT App'x C, 1991 WL 688702 (1991).

The Court agrees that there exists an implicit conflict between Mr. White's social limitations and the requirements for the position of surveillance systems monitor. *See, e.g.*, *Beaupre v. Berryhill,* 2020 WL 343698, at *6 (D. Nev. Jan. 21, 2020); *Richard v. Colvin*, 2013 WL 4522082, at *9 (W.D. Wash. Aug. 27, 2013); *Adams v. Astrue*, 2011 WL 1833015, at *6 (N.D. Cal. May 13, 2011); *Darwin v. Astrue*, 2010 WL 4718793, at *3 (C.D. Cal. Nov. 12, 2010). Substantial authority reflects that a person cannot be expected to maintain

only occasional (up to 1/3 of the time) contact with others when the job requires frequent (between 1/3 and 2/3 of the time) communications with other people.

As for whether Mr. White's limited reasoning ability conflicts with the level-two reasoning associated with other positions (Checker I, mail clerk, mail addresser, and office helper), the answer is less clear. Several district courts within the Fifth Circuit have held that this requirement is consistent with a "simple instructions" limitation. *See, e.g.*, *Trest v. Colvin,* 2015 WL 5224477, at *4 (S.D. Miss. Sept. 8, 2015) ("Plaintiff's limitation to simple instructions and repetitive tasks does not preclude [reasoning level two] jobs"); *Melton v. Astrue*, 2012 WL 1004786, at *2-3 (N.D. Miss. Mar. 26, 2012) (noting that a number of circuit courts have found no conflict).[1]

Assuming *arguendo* that a conflict does exist, Mr. White's contentions still would not merit reversal. The Social Security Regulations prescribe the approach for resolving conflicts between the DOT's requirements and the vocational expert's testimony about the work a claimant can perform. Under SSR 00-4p the ALJ must inquire about that conflict on the record and elicit an explanation. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

---

[1] The courts of appeals are divided on this issue. *Compare Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir.2005), *and Money v. Barnhart*, 91 Fed. App'x 210, 215 (3d Cir. 2004) (finding no conflict between reasoning level two and simple instructions), *with Rounds v. Comm'r of Soc. Sec. Admin.*, 807 F.3d 996 (9th Cir. 2015) (holding that reasoning level two directly conflicts with an RFC limiting a claimant to simple instructions). The Fifth Circuit has not resolved this issue.

In this instance, the ALJ conducted the necessary inquiry into whether the DOT's requirements were consistent with the limitations that she provided, and the expert explained the basis for her conclusions. *See* R.53-54 (testifying that many of Mr. White's limitations do not come from the DOT, and rather they come from the expert's experience). In particular, the vocational expert testified that her opinion about the impact of Mr. White's mental limitations on his ability to perform the listed jobs was based on how those jobs were actually performed. *Id.* That answer, in turn, was informed by her training and 16-year experience in vocational rehabilitation. R.54.

Notably, Mr. White does not argue that this case should be remanded for further explanation about a conflict; he merely asserts that the conflicts between the DOT and the listed jobs preclude him from performing those jobs. *See* Dkt. 25 at 24-25. But to reverse the ALJ's decision based on a discrepancy that the vocational expert explicitly addressed and explained would improperly disregard the expert's role and contradict the clear mandate of SSR 00-4p.

In sum, the Court concludes that the vocational expert adequately explained any discrepancies between the DOT and Mr. White's RFC. Such alleged conflicts do not categorically foreclose the jobs that Mr. White was qualified to perform.[2] No reversible error has been shown.

---

[2] The Court therefore finds it unnecessary to address the merits of the ALJ's further finding that Mr. White could perform a sixth alternative job of "table worker."

## Conclusion

For the foregoing reasons, Mr. White's motion for summary judgment (Dkt. 25) is **DENIED**, the Commissioner's motion for summary judgment (Dkt. 26) is **GRANTED**, and the decision of the ALJ is **AFFFIRMED**.

Signed on September 26, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge